IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS E. SIMMONS, | ) | CASE NO. 1:13 CV 2596 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Thomas E. Simmons under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] The Commissioner filed a motion to continue[10] the telephonic oral argument scheduled for October 29, 2014,[11] and the motion was granted.[12] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument and, therefore, the telephonic oral argument was not rescheduled.

**B.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Simmons, who was 54 years old at the time of the administrative hearing,[13] has a GED,[14] lives alone,[15] and has "spent the majority of his life in prison" since he was 17 and convicted of the involuntary manslaughter of his mother.[16]

---

[6] ECF # 13.

[7] ECF # 20 (Simmons's brief); ECF # 22 (Commissioner's brief).

[8] ECF # 20-1 (Simmons's charts); ECF # 22-1 (Commissioner's charts).

[9] ECF # 21 (Simmons's fact sheet).

[10] ECF # 24.

[11] ECF # 23.

[12] ECF # 25.

[13] Transcript ("Tr.") at 32, 34.

[14] *Id*. at 32.

[15] *Id*. at 24.

[16] *Id*. at 23 n.5. However, as the ALJ also noted, "there is no indication that [Simmons] has been imprisoned for any new crimes since he was released from prison in 2003." *Id.*

The ALJ, whose decision became the final decision of the Commissioner, found that Simmons had the following severe impairments: an anxiety-related disorder (post traumatic stress disorder), a psychotic disorder, and borderline intellectual functioning.[17]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Simmons's residual functional capacity ("RFC"):

> The claimant has had no exertional limitations since the October 31, 2010 alleged onset date but he has had some nonexertional limitations related to his mental impairments. More specifically, and with the exception of briefer periods of less than 12 continuous months, the claimant has been restricted to working in jobs where he would have to understand, remember and carry out no more than simple instructions, he would not have to have more than occasional interactions with supervisors, coworkers and members of the public, and he would not have to make more than simple work-related decisions.[18]

The ALJ decided that this RFC precluded Simmons from performing his past relevant work as a material handler.[19]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Simmons could perform.[20] The ALJ, therefore, found Simmons not under a disability.[21]

---

[17] *Id*. at 20.

[18] *Id.* at 26.

[19] *Id.* at 32.

[20] *Id.* at 33.

[21] *Id.*

C.    **Issue on judicial review and decision**

Simmons asks for reversal of the Commissioner's decision on the ground that it does

not have the support of substantial evidence in the administrative record. Specifically,

Simmons presents the following issue for judicial review:

> The ALJ assigned the opinion of Simmons's treating psychiatrist, Dr. Aileen
> Hernandez, little weight. Does substantial evidence support that finding?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is

supported by substantial evidence and, therefore, must be affirmed.

## Analysis

A.    **Standards of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security
> administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is
> limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact,
> if supported by substantial evidence, shall be conclusive...." In other words, on
> review of the Commissioner's decision that claimant is not totally disabled
> within the meaning of the Social Security Act, the only issue reviewable by
> this court is whether the decision is supported by substantial evidence.
> Substantial evidence is " 'more than a mere scintilla. It means such relevant
> evidence as a reasonable mind might accept as adequate to support a
> conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely
> because there exists in the record substantial evidence to support a different

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[22]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[23] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[24]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[25]

---

[22] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[23] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[24] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[25] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[26]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[27] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[28]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[29] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[30] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[31] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[32]

---

[26] *Id.*

[27] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[28] *Id.*

[29] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[30] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[31] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[32] *Id.* at 535.

-6-

In *Wilson v. Commissioner of Social Security*,[33] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[34] The court noted that the regulation expressly contains a "good reasons" requirement.[35] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[36]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[37] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[38] The former confers a substantial, procedural right on

---

[33] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[34] *Id.* at 544.

[35] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[36] *Id.* at 546.

[37] *Id.*

[38] *Id.*

-7-

the party invoking it that cannot be set aside for harmless error.[39] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[40]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[41] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[42] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[43] *Blakley v. Commissioner of Social Security*,[44] and *Hensley v. Astrue*.[45]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[46] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[39] *Id.*

[40] *Id.*

[41] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[42] *Id.* at 375-76.

[43] *Rogers*, 486 F.3d at 242 (6th Cir. 2007).

[44] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[45] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[46] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[47] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[48] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[49]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[50] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[51] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[52] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[47] *Id.*

[48] *Id.*

[49] *Rogers*, 486 F.3d at 242.

[50] *Gayheart*, 710 F.3d at 376.

[51] *Id.*

[52] *Id.*

-9-

and the treatment reports.[53] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[54]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[55]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[56] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[57] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[58] or that objective medical evidence does not support that opinion.[59]

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Rogers*, 486 F.3d 234 at 242.

[57] *Blakley*, 581 F.3d at 406-07.

[58] *Hensley*, 573 F.3d at 266-67.

[59] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[60] The Commissioner's *post hoc* arguments on judicial review are immaterial.[61]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[62]

- the rejection or discounting of the weight of a treating source without assigning weight,[63]

---

[60] *Blakley*, 581 F.3d at 407.

[61] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[62] *Blakley*, 581 F.3d at 407-08.

[63] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[64]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[65]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[66] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[67]

The Sixth Circuit in *Blakley*[68] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[69] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[70]

---

[64] *Id.*

[65] *Id.* at 409.

[66] *Hensley*, 573 F.3d at 266-67.

[67] *Friend*, 375 F. App'x at 551-52.

[68] *Blakley*, 581 F.3d 399.

[69] *Id.* at 409-10.

[70] *Id.* at 410.

In *Cole v. Astrue*,[71] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[72]

## B.  Application of standards

Although Simmons's brief frames the issue here in the larger context of whether the ALJ properly followed the sequential evaluation process, the essential question is whether the ALJ adequately dealt with the functional limitations opinion of Simmons's treating psychiatrist, Aileen Hernandez, M.D.

Here, the ALJ gave that opinion little weight, finding that this opinion was "inapposite" to the opinions of the consulting psychologist and the State reviewing psychologists, as well as not supported by the record as a whole.[73] In particular, the ALJ determined that Simmons's mental functioning was not as bad as depicted by Dr. Hernandez over any continuous 12-month period since the alleged onset date and that Dr. Hernandez appeared to be "unduly influenced" by Simmons's subjective complaints.[74] Further, the ALJ concluded that Dr. Hernandez's opinion was inconsistent with the observations made during

---

[71] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[72] *Id.* at 940.

[73] Tr. at 31.

[74] *Id.*

-13-

an examination on July 13, 2012.[75] Finally, the ALJ noted that Dr. Hernandez's opinion was entitled to lesser weight because she "did not have access to all the records concerning [Simmons] that [the ALJ] has before him."[76]

Before addressing the issue of how the ALJ evaluated Dr. Hernandez's opinion, Simmons's brief launches a broad challenge to the way in which the ALJ worked through the sequential evaluation process. Admittedly, the ALJ's approach was unusual. He discussed credibility, the source opinions, and the listing criteria and analysis all under step two, instead of their more customary location in the process. However, despite the unconventional structure of the decision, Simmons does not make an argument that the ALJ erred by excluding any severe impairments from the step two findings.

Further, in another step two discussion, Simmons argues that the ALJ improperly made reference here to a 12-month durational requirement for impairments. Rather, he submits, the durational requirement applies only to limitations and the disabilities caused thereby. In raising this point, however, Simmons does not then submit that any impairments were excluded from the step two findings because of this "misapplication."

That said, a brief review of the case law establishes that this observation has no relevance here. The 12-month requirement applies to both.[77]

---

[75] *Id.*

[76] *Id.*

[77] *Ross v. Colvin*, No. 1:14CV315, 2014 WL 6896145, at *4 (N.D. Ohio Dec.8, 2014) (impairments); *Styen v. Comm'r of Soc. Sec.*, No. 4:12CV455, 2013 WL 441068, at *18 (N.D. Ohio Jan. 14, 2013) (limitations).

Next, Simmons also complains about step three. But he identifies no specific listing sections that should be considered met or equaled but were not discussed. In fact, the discussion at step two is enough to support the findings at step three.[78] Also two state agency reviewing psychologists gave opinions that none of Simmons's impairments meet or equal a listing.[79]

Thus the real issue is the little weight given to the opinion of the treating psychologist, Dr. Hernandez. Dr. Hernandez treated Simmons through a community agency, Resource Recovery. The opinion, which is a check questionnaire, rates Simmons as having no useful ability to function in almost every category.[80]

Dr. Hernandez saw Simmons on three occasions. Otherwise, he was seen by counselors, social workers, and therapists at Resource Recovery. As noted above, the ALJ justified the weight based on inconsistencies in the treatment notes at Resource Recovery and observations made by Hernandez in her notes. He furnishes many citations to the record.[81]

As set forth in the authorities cited above, the key here is that any decision to accord lesser weight to the opinion of a treating source must be supported by good reasons given in a way that permits meaningful judicial review. Here, the analysis of Dr. Hernandez's opinion,

---

[78] Tr. at 22-26.

[79] *Id.* at 26, 91-112, 115-40.

[80] *Id.* at 364-69.

[81] *Id.* at 25-26, 31. The ALJ discussed Dr. Hernandez's opinion under both step two and step four.

both in the discussion at step two and later in the reasoning set forth in step four, provides ample explanation for the decision to accord Dr. Hernandez's opinion the weight assigned by the ALJ. Moreover, these reasons are well-articulated and amount to "good reasons" within the rubric of the case authority and regulations. Thus, the Commissioner has provided substantial evidence in support of the decision to give Dr. Hernandez's opinion lesser weight.

## Conclusion

For the reasons stated above, I find that substantial evidence supports the finding of the Commissioner that Simmons had no disability. The denial of Simmons's applications is affirmed.

IT IS SO ORDERED.

Dated: March 5, 2015                          s/ William H. Baughman, Jr.
                                              United States Magistrate Judge